UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Meredith Frels, individually, and on behalf of classes of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>Qwest Corporation, Enhanced Services Billing, Inc., doing business as Enabill, and PaymentOne Corporation,<br><br>Defendants. | Civ. No. 10-2520 (PAM/FLN)<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Motions to Dismiss filed separately by Defendants Qwest Corporation, Enhanced Services Billing, Inc. ("ESBI" or "Enabill"), and PaymentOne Corporation. For the reasons that follow, the Court grants Qwest's Motion, and grants in part and denies in part the remaining Motions.

**BACKGROUND**

Plaintiff Meredith Frels receives her residential telephone service through Defendant Qwest. She contends that between November 2008 and January 2010, her telephone bill contained charges for third-party services that she did not authorize. These third-party services included web-hosting products, oral e-mail services, and diet-monitoring services. (Compl. ¶ 6.) The Complaint does not indicate whether Frels ever complained to Qwest about the charges or asked that the unauthorized charges be removed from her bill. In her

submissions in opposition to this Motion, Frels submits what she contends are letters to Qwest repeatedly requesting that the charges be removed; many of these communications, however, were not sent to Qwest but rather to collection agencies and the other Defendants in this matter. Whether she disputed the charges is not germane to the issues in this Motion, however.

The other two Defendants are so-called "aggregators." These companies forward charges from third-party service providers to the appropriate local telephone company for inclusion on the subscriber's monthly phone bill. Defendants ESBI and PaymentOne are the two aggregators included on the Qwest bills Frels is disputing here.

Frels seeks to represent a class "consisting of all of Defendant Qwest's telephone subscribers in the United States who suffered losses or damages as a result of Defendants Qwest, ESBI, Enabill, and PaymentOne charging for premium-content products and services not authorized by the subscriber . . . ." (Compl. ¶ 48.)

## DISCUSSION

### A.   Standard of Review

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir.

1986) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

When evaluating a Motion to Dismiss, the Court must look at the face of the complaint to determine whether it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1938, 1949 (2009) (emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Eighth Circuit has emphasized that courts considering motions to dismiss must "take the plaintiff's factual allegations as true." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

> Twombly and Iqbal did not abrogate the pleading standard of Rule 8(a)(2) [requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"]. Rather, those decisions confirmed that Rule 8(a)(2) is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Hamilton v. Palm, — F.3d —, 2010 WL 3619580, at *1 (8th Cir. Sept. 20, 2010) (quoting Iqbal, 129 S. Ct. at 1949).

**B.    Qwest's Motion**

Frels raises five causes of action against Qwest: breach of contract; conversion; violation of the Minnesota Telecommunications Act, Minn. Stat. § 237.665; violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44; and violation of the Consumer Fraud Act, Minn. Stat. § 325F.68.

    1.    Breach of Contract

Frels's breach of contract claim depends on reading into the contract a duty on the part of Qwest. According to Frels, that duty arises under the Minnesota Telecommunications Act, which provides that a telephone company may not include unauthorized third-party charges on a subscriber's bill. Minn. Stat. § 237.665(a). According to Frels, Qwest breached the contract by including the allegedly unauthorized charges on her bill.

As discussed more fully below, the Telecommunications Act does not contain any private right of action for a violation of its terms. It would circumvent the legislature's intent to find that a plaintiff can sue for a violation of the Act through breach of contract, if that same plaintiff cannot claim an independent cause of action for a violation. The breach of contract claim fails.

2. Conversion

A claim for conversion lies when a defendant willfully deprives a plaintiff of plaintiff's property interest. See DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997) ("[Conversion] is defined as an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" (quoting Larson v. Archer-Daniels-Midland Co., 32 N.W.2d 649, 650 (Minn. 1948))). The property at issue here is Frels's money, in the form of payments she made for services she allegedly did not authorize.

There is no possible conversion claim here. As Qwest points out, any payments Frels made were voluntary, and thus were not "converted" for the purposes of the tort of conversion. See, e.g., Washington Cty. Housing & Redev. Auth. v. Swager, No. CX-91-

1880, 1992 WL 31353 (Minn. Ct. App. Feb. 25, 1992) (finding that voluntary conveyance cannot form basis of conversion claim). In addition, her conversion claim is merely another attempt to raise a claim under the Telecommunications Act and, as discussed below, the Telecommunications Act provides her no remedy. Her conversion claim fails.

    2.    <u>Telecommunications Act</u>

As Frels contends, the Telecommunications Act prohibits the conduct she alleges here. Specifically, the Act provides,

> A telephone company or telecommunications carrier providing local service shall not include on a customer's bill a charge for goods or services on behalf of a third-party service provider unless the third-party service provider has obtained the customer's prior express authorization to include such charges on the customer's bill.

Minn. Stat. § 237.665(a). Frels does not dispute that there is no private right of action in the Telecommunications Act. She contends, however, that the Court should imply a private right of action into the statute.

Her argument is foreclosed by <u>Firstcom, Inc. v. Qwest Corp.</u>, 555 F.3d 669 (8th Cir. 2009). In <u>Firstcom</u>, the Eighth Circuit noted that the Minnesota Telecommunications Act once contained a private right of action. <u>Id.</u> at 676. The Act provided that a subscriber could "bring a private cause of action in court against a provider of local exchange telephone service based on conduct for which a penalty is imposed under this section." Minn. Stat. § 237.462, subd. 11. That section, however, expired by its own terms on August 1, 2006. <u>Firstcom</u>, 555 F.3d at 676. The court noted that the Act continued to provide a remedy, in the form of an action by the attorney general in the name of the state. <u>Id.</u> (citing Minn. Stat.

§ 237.461). Thus, the Eighth Circuit held that "the expiration of subdivision 11 of section 237.462 coupled with the continued vitality of section 237.461 demonstrated that Firstcom cannot bring a private cause of action against Qwest pursuant to the [Telecommunications Act]." Id.

Frels argues that Firstcom is not relevant because that case involved a phone company suing another phone company for alleged violations of provisions of the Telecommunications Act that are not at issue here. But the decision in Firstcom was not limited to the specific section of the Act at issue in that case. The Firstcom opinion is founded on the idea that the Minnesota legislature knew what it was doing when it created a private cause of action under the Act, and also knew what it was doing when it allowed that private cause of action to expire. The fact that the legislature declined to extend the private cause of action to other sections of the Act, or to extend the time for the expiration of that private cause of action, indicates that the legislature did not intend there to be any private cause of action under the Telecommunications Act after August 1, 2006. Frels's claim for a violation of the Telecommunications Act fails as a matter of law.

    4.    <u>Deceptive Trade Practices Act</u>

The Minnesota Deceptive Trade Practices Act ("DTPA") provides a cause of action for consumers damages by a "deceptive trade practice." Minn. Stat. § 325D.44. Frels claims that Qwest violated the DTPA in three ways: by "caus[ing] likelihood of confusion or of misunderstanding as affiliation, connection, or association with, or certification by, another," id. § 325D.44, subd. 1(3); "represent[ing] that goods or services have sponsorship, approval,

6

[or] characteristics . . . that they do not have," id. subd. 1(5); and "engag[ing] in [] other conduct which similarly creates a likelihood of confusion or of misunderstanding," id. subd. 1(13).

Both Qwest and Frels submitted Frels's phone bills for the Court's consideration in connection with this Motion, and thus apparently do not dispute that the bills are matters properly considered on a Motion to Dismiss as "necessarily embraced" by the pleadings. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co., 967 F. Supp. 1148, 1153 (D. Minn. 1997) (Tunheim, J.)). Those bills show that each third-party charge was accompanied by language stating that Frels could dispute the charges if she believed the charges were not legitimate.

The wording on Frels's Qwest bill belies her claims that Qwest's billing practices caused any likelihood of confusion. Those bills highlighted any third-party charge with a long disclaimer, including the language noted above that Frels could dispute any charge. The bills also noted the identity of each third-party charger. As a matter of law, Frels could not have been confused by her bills into believing that the third-party charges were somehow Qwest charges or were other, legitimate charges. Her DTPA claim fails.

5. Consumer Fraud Act

Frels's last claim against Qwest arises under the Minnesota Prevention of Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.68. The CFA makes illegal any "misrepresentation, misleading statement or deceptive practice" in connection with the sale of goods or services. Minn. Stat. § 325F.69, subd. 1. Again, the bills in question belie any claim that Qwest

misrepresented anything. Frels contends that the bills failed to disclose that Qwest subscribers "would be charged for unauthorized third-party content services if they used [Qwest's] services." (Compl. ¶ 79.) She also contends that Qwest "did not disclose to [subscribers] that charges for third-party content services were unauthorized." (Id.) But this is precisely what Frels's bills did disclose. She has failed to establish any misleading statement, misrepresentation, or deceptive practice on the part of Qwest, and her CFA claim fails.

**C.     ESBI's Motion**

The Complaint contends that ESBI falsely billed Frels for four different services: residential e-mail, FindYourDiet.com, Intelicom Messaging, and Callwave. (Compl. ¶¶ 32, 33, 35, 36.) ESBI argues that Frels's claims must be dismissed because the evidence shows that she did in fact authorize the charges she now disputes. Essentially, ESBI argues that Frels's claims are false. This is not an appropriate argument to make on a Motion to Dismiss. The Court must take Frels's allegations as true, and may not go beyond the Complaint and the documents, such as her phone bills, that are "necessarily embraced" by the Complaint. See discussion supra Part B.4. The documents ESBI submitted are not "necessarily embraced" by the Complaint.

Nor is it appropriate to convert the Motion into a Motion for Summary Judgment. See Fed. R. Civ. P. 12(d) (providing that if a motion to dismiss presents matters outside the pleadings, it "must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the

motion"). ESBI contends that it has documentation that Frels enrolled in the various third-party services. Frels argues that ESBI's documents are not authentic or complete, and she insists that she did not authorize the charges. Defendants complain that Frels has not provided evidence to support her allegations, but on a Motion to Dismiss, Frels need not do so. The parties have yet to engage in any discovery. Until they do, the factual question of whether Frels authorized the charges is an open one, and one that is simply not appropriate for resolution on a Motion to Dismiss.

In any case, however, Frels's claim for a violation of the Telecommunications Act must be dismissed because there is no private right of action under the Act. Moreover, given the conclusion that Frels cannot state a claim for breach of contract against Qwest, her contention that ESBI intentionally interfered with her contract with Qwest (Count VI) also fails.

However, Frels's claims under the DPTA and CFA against ESBI are different from her common-law claims. In these claims, Frels argues that ESBI "hid" charges and misrepresented the actual source of the charges and the authorization for those charges. That conduct is what the DTPA and CFA prohibit, and Frels has therefore plausibly raised claims under these two statutes.

**D.     PaymentOne's Motion**

Frels claims that Defendant PaymentOne placed unauthorized charges on her Qwest bill for "Enhanced Telecommunication Services" and "ID Protect." (Compl. ¶¶ 34-36.) Her claims against PaymentOne are identical to her claims against ESBI.

As with ESBI's Motion, PaymentOne contends that it has evidence that Frels in fact authorized the charges she now disputes. Again, this evidence is outside the pleadings and thus is not something the Court can consider on a Motion to Dismiss. Frels disputes the authenticity of PaymentOne's evidence, and this dispute simply cannot be resolved in a Rule 12(b)(6) proceeding.

Frels's claims against PaymentOne for violations of the Telecommunications Act, breach of contract, conversion, and tortious interference all fail, for the same reasons discussed above. Her claims for violations of the DTPA and CFA, however, survive.

**CONCLUSION**

Qwest is entitled to a dismissal of all claims against it. The other Defendants are entitled to a dismissal of some, but not all, claims. Accordingly, **IT IS HEREBY ORDERED that**:

1. Qwest's Motion to Dismiss (Docket No. 20) is **GRANTED**;

2. PaymentOne's Motion to Dismiss (Docket No. 24) is **GRANTED in part** and **DENIED in part**; and

3. Enhanced Services Billing's Motion to Dismiss (Docket No. 28) is **GRANTED in part** and **DENIED in part**.

Dated: Tuesday, October 19, 2010

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge